UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

COLLEEN C. PICCONE and          )
PETER V. QUAGLIA,               )
    Plaintiffs,                 )
                                )
        v.                      )    C.A. No. 11-10143-MLW
                                )
                                )
JOHN W. BARTELS, JR.,           )
    Defendant.                  )

MEMORANDUM AND ORDER

WOLF, D.J.                                      September 29, 2012

Plaintiffs Coleen C. Piccone and Peter V. Quaglia in this case
allege that defendant John W. Bartels, Jr. made defamatory
statements about them. In essence, Piccone and Quaglia, who are
employees of the United States Department of Homeland Security
("DHS"), claim that Bartels, the Chief of Police in Dalton
Massachusetts, falsely told DHS that Piccone "may know" the
location of her fugitive brother and sister-in-law, and falsely
told a Massachusetts State Trooper that Quaglia provided
"assistance" to these fugitives. In their Amended Complaint,
plaintiffs allege these statements constituted various torts under
the laws of the Commonwealth of Massachusetts.

Bartels filed a motion to dismiss the case for lack of subject
matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1),
and for failure to state a claim on which a relief can be granted
under Rule 12(b)(6) (the "Motion"). The Motion was referred to the

1

Magistrate Judge for a Report and Recommendation. In his July 19,
2011 Report and Recommendation, the Magistrate Judge recommended
that the Motion be allowed in part and denied in part. Bartels
filed objections to some but not all of the Magistrate Judge's
recommendations. Plaintiffs did not object to the recommended
dismissal of some of their claims. They did, however, respond to
Bartels' objections.

The court has reviewed de novo the Magistrate Judge's proposed
disposition to which Bartels objected. See Fed. R. Civ. P. 72(c).
The court is not required to review the recommendations as to which
no objection has been made. See 28 U.S.C. §636(b)(1)(C); Thomas v.
Arn, 474 U.S. 140, 149-50 (1985). The court finds the Magistrate
Judge's Report and Recommendation to be persuasive with regard to
the disputed issues. Therefore, the Report and Recommendation is
being adopted.

The court's decision is rooted in the following
considerations. It is now addressing a motion to dismiss for
failure to state a claim under Rule 12(b)(6). Therefore, it must
accept all of the factual allegations in the Complaint as true and
draw all reasonable inferences in favor of the plaintiff. See
Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 96 (1st Cir.
2007). The motion to dismiss must be denied if the plaintiffs have
alleged "a plausible entitlement to relief." Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 559 (2007). In making this determination the

2

court may consider documents that are central to plaintiffs' claims or sufficiently referenced in the Amended Complaint. See Beddall v. State St. Bank & Trust, Co., 137 F.3d 12, 16-17 (1st Cir. 1998); Watterson v. Page, 987 F.2d 1, 3-4 (1st Cir. 1993). When defamation is alleged, facts often need to be developed in discovery to determine whether the defendant's statements are protected by an absolute or conditional privilege. See e.g. Disend v. Meadowbrook School, 33 Mass. App. Ct. 674, 666-67 (1992) ("More facts need to be developed, on a motion for summary judgment or at trial, before a court may know whether [the defendant] has lawfully exercised a conditional privilege.")

Piccone's slander claim is based on the following statement reportedly made by Bartels to DHS and memorialized in a Memorandum of Activity that is Exhibit A to the Amended Complaint:

> [Bartels] could not provide any specific information that would indicate that either DHS employee was assisting in harboring the fugitives in the case. [Bartels] did not ask either DHS employee pointed questions as to the whereabouts of the children and/or the fugitives, but thought that Coleen Piccone "may know" their whereabouts. [Bartels] stated that his office contacted the Federal Bureau of Investigation to assist them in locating the fugitives and the children.

Ex. A at p. 2. Bartels asserts that this statement is an expression of opinion that cannot support an action for defamation under the reasoning of National Association of Government Employees, Inc., v. Central Broadcasting Corp., 379 Mass. 220, 226-28 (1979). However, in that case the Massachusetts Supreme Judicial Court held that:

"A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion. . . . A simple expression of opinion based on disclosed or assumed nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is. But an expression of opinion that is not based on disclosed or assumed facts and therefore implies that there are undisclosed facts on which the opinion is based, is treated differently." Thus if I write, without more, that a person is an alcoholic, I may well have committed a libel prima facie; but it is otherwise if I write that I saw the person take a martini at lunch and accordingly state that he is an alcoholic.

Id. (quoting Restatement of Torts, (Second) §566 (1977) (internal citations omitted).

Bartels argues that by telling DHS that he had not asked Piccone and Quaglia any pointed questions about the location of the fugitives he specifically disclaimed knowledge of undisclosed defamatory facts as the basis for his statement. However, this focus on a single sentence is too narrow. Bartels' statement that he "could not provide any specific information that either DHS employee was assisting in harboring the fugitives" could plausibly be understood to imply that there was some legal or other impediment to his disclosing the facts on which his opinion was based. Such facts could have been derived from a source other than Piccone and Quaglia, including the Federal Bureau of Investigation with which the statement indicates Bartels was working. If the statement in dispute was based on undisclosed facts, it could be found defamatory. Id. This is, therefore, a case in which Piccone

4

is entitled to discovery concerning what exactly Bartels said, and to have determined on a developed record whether Bartels' statement to DHS was a privileged statement of opinion that did not imply an allegation of undisclosed defamatory facts as the basis for the opinion. See id. at 227.

The court's reasoning is comparable concerning Bartels' request that Quaglia's slander claim be dismissed based on a claim of privilege. Plaintiffs allege that on February 1, 2008:

Chief Bartels discussed with an officer of the Massachusetts State Police Quaglia's "assistance" to fugitives. After the aforementioned conversation, Chief Bartels contacted various components within DHS to engage in a smear campaign against Piccone and Quaglia. At some point after the February 1, 2008 incident described above, Piccone and Quaglia learned Chief Bartels had made a telephone call to various DHS components complaining about Piccone and Quaglia.

Amended Comp., ¶24. Bartels contends that his statement about Quaglia was protected by the absolute privilege that applies to "'statements made to police or prosecutors prior to trial . . . if they are made in the context of a proposed judicial proceeding.'" Burke v. Town of Walpole, 405 F.3d 66, 94 (1st Cir. 2005) (quoting Correllas v. Viveiros, 410 Mass. 314, 320 (Mass. 1991)).

However, it cannot now be properly determined whether Bartels made his statement about Quaglia to the State Trooper as part of an investigation or, as Quaglia contends, gratuitously as part of a "smear campaign." In the context of the other allegations in the Amended Complaint, Quaglia's contention is plausible. Therefore,

the motion to dismiss based on absolute immunity must be denied without prejudice to the issue being decided on a motion for summary judgment or at trial. See Disend, 33 Mass. App. Ct. at 677; compare Seelig v. Harvard Coop. Soc'y, 355 Mass. 532, 538 (1969) (After trial, statements alleged to be slanderous where found to be privileged because made during the course of police officer's investigation).

Bartels other objections are fully and fairly addressed in the Magistrate Judge's Report and Recommendation.

In view of the foregoing, it is hereby ORDERED that:

1.   The July 19, 2011 Report and Recommendation (Docket No. 21) is ADOPTED and incorporated in this Memorandum.

2.   Defendant's Motion to Dismiss (Docket No. 17) is ALLOWED in part and DENIED in part. More specifically, the Motion is ALLOWED with regard to the libel claim, but not the slander claim, included in Count I, which alleges defamation; Count II, which alleges malicious falsehood; Count IV, which alleges a violation of a purported right to privacy; and Count V, which alleges intentional infliction of emotional distress. It is otherwise DENIED.

3.   Plaintiff's Motion to Supplement the Record in Support of Their Opposition to Defendant's Motion to Dismiss (Docket No. 28) is MOOT.

4.   The Joint Motion to Substitute Exhibit B to Document 28

6

(Docket No. 30) is ALLOWED.

    5.   Plaintiff's Motion for Order to Order Defendant to Serve
His Initial Disclosures and Participate in a Fed. R. Civ. P. 26(f)
Conference (Docket No. 24) is DENIED.

    6.   A Scheduling Conference will be held on October 11, 2012,
at 3:00 p.m., at the Springfield, Massachusetts courthouse. The
parties shall comply with the attached Notice of Scheduling
Conference.

                                    _____
                                    UNITED STATES DISTRICT JUDGE

7

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

COLLEEN C. PICCONE and PETER V. )
QUAGLIA,                        )
                     Plaintiffs )
                                )
                                )
            v.                  )     Civil Action No. 11-10143-MAP
                                )
                                )
                                )
JOHN W. BARTELS, JR.,           )
                     Defendant  )

REPORT AND RECOMMENDATION WITH REGARD TO
DEFENDANT'S MOTION TO DISMISS (Document No. 17)
July 19, 2011

NEIMAN, U.S.M.J.

Presently before the court is a state-law complaint arising out of statements

made by John W. Bartels, Jr. ("Bartels"), the Chief of Police of the Town of Dalton,

regarding a confrontation between him and Colleen Piccone ("Piccone") and Peter

Quaglia ("Quaglia") (together "Plaintiffs"). Plaintiffs filed their complaint in this forum as

a diversity case under 28 U.S.C. § 1332(a). Bartels, who is sued in his individual

capacity only, has moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1)

and (6), which motion has been referred to this court for a report and recommendation.

*See* 28 U.S.C. § 636(b)(1)(B). For the following reasons, the court will recommend that

the motion be allowed, but in part only.[1]

_____

[1] The complaint, as initially filed, also included as defendants the Dalton Police
Department and the Town of Dalton. Those defendants, along with Bartels, filed a
motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6). Rather than oppose the

1

## I. BACKGROUND

The following facts come directly from the amended complaint and are stated in a light most favorable to Plaintiffs, the parties opposing dismissal. *Young v. Lepone*, 305 F.3d 1, 8 (1st Cir. 2002).

In January of 2008, Piccone's brother was accused of child abuse by a day care worker in Dalton, Massachusetts.  Later that month, as a result of that accusation and the ensuing investigation, the Department of Social Services ("DSS") was granted temporary custody of Piccone's brother's three children.  However, at the time DSS was granted custody, Piccone's brother's wife, her sister-in-law, had already left the state with her three children.  DSS then began efforts to locate and take custody of the children. (Compl. ¶¶ 8-9, 12, 13.)  These events, as they concern Piccone's brother and sister-in-law, are currently the subject of another action in the District of Massachusetts. *See Piccone v. McClain*, 09cv30146-MAP.

As a result of the order granting temporary custody of her brother's children to DSS, Piccone, an attorney with the Department of Homeland Security ("DHS"), met with Massachusetts state government officials to notify them that she wanted to assist in vacating the existing court order to allow her brother and sister-in-law to return home with their children.  On February 1, 2008, Piccone, joined by Quaglia, a special agent for DHS, appeared for a court hearing in Massachusetts regarding the custody of the children. (*Id.* ¶¶ 1-2, 15-16.)

---

motion, Plaintiffs amended their complaint and no longer included the Dalton Police Department and the Town of Dalton as defendants.  In turn, Bartels filed the present motion to dismiss.  Accordingly, the court has found moot the original motion to dismiss.

Although that hearing was adjourned at DSS's request, the judge requested that a probation officer inspect Piccone's brother's home in order to ensure it met qualifying standards for placement of the children should the children be allowed to return home with Piccone's brother. (*Id.* ¶ 17-18.) Upon inspection, the probation officer determined only that the home needed to be affixed with a carbon monoxide detector before the children could be placed there. Piccone contacted her brother's attorney to inform him of the inspection results, who in turn advised her to purchase and install the carbon monoxide detector. (*Id.* ¶ 19.)

Plaintiffs purchased the carbon monoxide detector from a local hardware store and, upon returning to Piccone's brother's home, observed Bartels loading bags of Piccone's brother's personal property into a police car. (*Id.* ¶ 20.) Plaintiffs attempted to enter the residence to install the carbon monoxide detector, but Bartels blocked their entry and ordered them to identify themselves. Piccone presented her driver's license and Quaglia presented his federal identification indicating that he was an armed federal agent. Plaintiffs also told Bartels that they were at the residence to install the carbon monoxide detector pursuant to court instructions. (*Id.* ¶ 21.) Bartels informed Plaintiffs that he had arrest warrants for Piccone's brother and sister-in-law and again refused to allow Plaintiffs to enter the home. At some point, however, Bartels did allow Plaintiffs to enter the home to install the carbon monoxide detector. Plaintiffs did so and returned to the courthouse. The judge declined to rule on the custody issue, however, because the children were not present in the courtroom. The court recessed and Plaintiffs returned to New York. (*Id.* ¶¶ 22-23.)

Plaintiffs allege that, following their confrontation with him, Bartels told a

3

Massachusetts State Police Officer that Quaglia had provided "assistance" to fugitives. (*Id.* ¶ 24.) Plaintiffs further allege that Bartels contacted Immigration and Customs Enforcement ("ICE") and the DHS Office of the Inspector General ("OIG") regarding the incident and made defamatory remarks that impugned their reputations and implied their connection with criminal activity. (*Id.* ¶¶ 29, 30). As a result of Bartels' communications, ICE, DHS, and U.S. Customs & Border Protection ("CBP") conducted an extensive internal investigation which ultimately resulted in a "no-finding." (*Id.* ¶¶ 26, 40.) Bartels' accusations against the Plaintiffs allegedly remain a permanent part of their personnel files. As a result, Plaintiffs assert, they (1) have suffered diminished reputations in both their personal and professional lives, (2) have lost opportunities for advancement both within and without DHS, and (3) are no longer assigned to special "career-enhancing" projects and assignments. (*Id.* ¶¶ 46-50.)

## II. DISCUSSION

### A. Subject Matter Jurisdiction

In his motion to dismiss, Bartels first argues that because Plaintiffs are at the maximum salary levels for their current positions, they have suffered no economic loss as a result of his conduct and therefore cannot meet the statutory minimum amount-in-controversy required for diversity jurisdiction. Plaintiffs counter that, as a result of Bartels' defamatory remarks, they were denied opportunities that would have increased both their pensions and their salaries and, further, note that courts in defamation cases have often awarded sums far in excess of $75,000. *See, e.g.*, *Murphy v, Boston Herald, Inc.*, 865 N.E.2d 746, 751 (Mass. 2007) (trial court award of $2.01 million for defamation); *Tosti v. Ayik*, 508 N.E.2d 1368, 1369 (Mass. 1987) (finding an award of

4

$275,000 was not excessive for defamation and tortious interference with an employment relationship).

In determining whether a plaintiff has met the amount-in-controversy requirement courts apply the rule that "the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Spielman v. Genzyme Corp.*, 251 F.3d 1, 5 (1st Cir. 2001) (quoting *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938)). Here, because the extent of Plaintiffs' economic harm is in dispute at this time and because they may well be entitled to more than $75,000 in damages should they prevail on their defamation claims, the court cannot conclude with any legal certainty that Plaintiffs' claims do not meet the amount-in-controversy minimum.

B. Failure to State a Claim

When faced with a Rule 12(b)(6) motion to dismiss for failure to state a claim, as here, the court must accept the allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiffs. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Coyne v. City of Somerville*, 972 F.2d 440, 443 (1st Cir. 1992). To state a claim, Federal Rule of Civil Procedure 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Sepulveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 28 (1st Cir. 2010). Recently, the Supreme Court made clear that, under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint that states a plausible claim for relief, on its face, will survive a motion to dismiss. *See*

5

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009). The Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949.

## 1. Defamation and Malicious Falsehood (Counts I and II)

As an initial matter, the court will recommend allowing Bartels' motion to dismiss Count II, Plaintiffs' claim for malicious falsehood. Bartels asserts, and Plaintiffs appear to concede, that there is no case law establishing such a claim in Massachusetts. Still, somewhat contradictorily, Plaintiffs assert that in 1838, in *Commonwealth v. Kneeland*, the Supreme Judicial Court recognized a cause of action for malicious falsehood. 37 Mass. 206 (20 Pick.) (1838). In fact, far from recognizing a common law cause of action for the publication of malicious falsehoods, the court noted only that nothing in the Massachusetts constitution prevented the legislature from enacting laws that punish malicious falsehoods. Cleared of any such constitutional roadblocks, the court upheld the existing libel statute which *criminalized* those malicious falsehoods designed to "calumniate and disparage the Supreme Being." *Id.* at 220-221. That is certainly not the case here; and, while current libel and slander law may rightly be construed as punishing various types of malicious falsehoods, no distinct cause of action by that name lies in Massachusetts.

Plaintiffs, however, also assert claims against Bartels for defamation (Count I). To prevail on a claim for libel or slander under Massachusetts law, a plaintiff must establish that the defendant was at fault for the publication of a false statement about the plaintiff which was capable of damaging his or her reputation in the community and

6

which either caused economic loss or is actionable without proof of economic loss.

*Stanton v. Metro* Corp., 438 F.3d 119, 124 (1st Cir. 2006); *White v. Blue Cross & Blue Shield of Massachusetts, Inc.*, 809 N.E.2d 1034, 1036 (Mass. 2004) (same); *see also Draghetti v. Chmielewski*, 626 N.E.2d 862, 866 n.4 (Mass. 1994) (explaining that defamation "encompasses the torts of libel and slander--the one being in general written while the other in general is oral").

As to libel, Plaintiffs' sole statement in support of that claim asserts that Bartels "knew that his slanderous statements would result in a writing . . . which would include his defamatory remarks." (Plaintiffs' Opposition to Defendant's Motion to Dismiss ("Pls. Opp.") at 4.) Although such an assertion may constitute a factual claim about a defendant's state of mind, such a bare allegation of intent, in the court's opinion, is inadequate to state a claim absent more specific factual assertions. *See Iqbal*, 129 S. Ct. at 1951 (rejecting the "bare assertion" that defendants "knew of, condoned, and willfully and maliciously agreed to subject [plaintiff] to harsh conditions . . . solely on account of [his] religion, race, and/or national origin" because of its conclusory nature). That specificity is absent from the complaint here, and the inferences which Plaintiffs urge upon the court are too tenuous.

That is not to say, of course, that a defendant may never be held liable for causing a written publication containing his or her defamatory statements. The court simply concludes that, without more, Plaintiff's naked assertion is insufficient to hold Bartels accountable for any writing containing his alleged defamatory remarks. *See Sanchez v. Pereira-Castillo*, 590 F.3d 31, 49 (1st Cir. 2009) ("A plaintiff must offer "more than an unadorned, the defendant-unlawfully-harmed me accusation," in order to claim

7

"a plausible entitlement to relief.") (quoting *Rodriguez-Ortiz v. Margo Caribe, Inc.*, 490

F.3d 92, 95-96 (1st Cir. 2007). Accordingly, the court will recommend granting Bartels'

motion with regard to Plaintiffs' claim of libel.

For the reasons which follow, however, the court will recommend denying

Bartels' motion to dismiss that part of Count I which asserts claims of slander related to

the events of February 1, 2008. The court has considered Plaintiffs' slander claims

separately.

### a. Piccone's Slander Claim

With regard to her slander claim, Piccone asserts that Bartels informed DHS that,

although he could not provide specific information that would indicate that she was

"harboring the fugitives" and despite the fact that he "did not ask [Plaintiffs] pointed

questions as to the whereabouts of the children and/or the fugitives," he stated that he

nonetheless believed that "Piccone 'may know' their whereabouts." (Compl., Exhibit A

at 2.) These comments, Piccone alleges, implied that she might be withholding

information relevant to a criminal investigation despite Bartels' knowledge that those

comments had no foundation.

It should be noted that, although Piccone asserts that Bartels contacted DHS

and made the quoted statements which resulted in an investigation of both her and

Quaglia, the copy of the memorandum of activity provided to the court and cited by

Plaintiffs does not mention Bartels by name. Rather, it states that the writer was

"contacted by REDACTED Deportation Officer" concerning allegations made to the

deportation officer by a member of the Dalton Police Department ("DPD") involving

Plaintiffs. (Compl., Exhibit A at 1.) The memorandum continues:

8

> REDACTED stated that he was initially contacted by
> REDACTED, Officer, DPD [concerning the February 1
> incident.] . . . REDACTED stated that once he understood that
> allegations were being made against DHS employees, he
> informed REDACTED that he would put DPD directly in contact
> with [OIG]. REDACTED provided the writer with the name of
> REDACTED and the DPD's main telephone number to directly
> receive the information.    On February 1, 2008, at
> approximately 5:10 p.m., the writer contacted REDACTED at
> the DPD. REDACTED immediately placed REDACTED on the
> telephone to describe the alleged incident between Piccone
> and Quaglia with members of the DPD.

(*Id.*) The allegedly defamatory statements made to DHS followed.

As is evident from this document, it is not at all clear that Bartels made the

statements to DHS. Nor is it clear whether any such statements sparked an inquiry or

were made in response to a DHS investigation that was already underway.

Nevertheless, drawing all inferences in a light most favorable to Piccone (and Quaglia,

for that matter), the court assumes that Bartels made the targeted statements and that,

as a result, DHS commenced an internal investigation of Plaintiffs. Bartels assumes the

same for present purposes. Nevertheless, Bartels argues that, because he stated only

that he *thought* Piccone may know the whereabouts of her brother and sister-in-law, he

was merely expressing his opinion, expressions which are not actionable under

defamation law.

Bartels is correct that an "expression of opinion based on disclosed or assumed

nondefamatory facts is not itself sufficient for an action of defamation, no matter how

unjustified and unreasonable the opinion may be or how derogatory it is." *Nat'l Ass'n of

Gov't Employees, Inc. v. Cent. Broad. Corp.*, 396 N.E.2d 996, 1000 (1979). However,

as the Supreme Judicial Court has explained, even if a statement represents an

9

individual's opinion, it is not protected "if it implies the allegation of undisclosed defamatory facts as the basis for the opinion." *Id.* In that vein, the Supreme Judicial Court later directed courts to "examine the statement in its totality and in the context in which it was uttered or published . . . [and to] consider all of the circumstances surrounding the statement." *Lyons v. Globe Newspaper Co.*, 612 N.E.2d 1158, 1162 (1993) (internal quotation omitted).

Here, as Piccone asserts, Bartels' statement implied that he had some basis for believing that she might be withholding relevant information from the police. To the extent Bartels' expression may be found to impute criminal behavior to Piccone, it could be deemed defamatory. *See Stone v. Essex County Newspapers, Inc.*, 330 N.E.2d 161, 165 (Mass. 1975) ([A]n imputation of crime is defamatory per se"); *Brown v. Hearst Corp.*, 862 F. Supp. 622, 628 (D. Mass 1994) "[A] statement which expressly states or insinuates that the plaintiff is a criminal or participated in a criminal act is defamatory in proper circumstances.").

The defamatory tinge of Bartels' statements only darkens when the comments are viewed in context. Bartels, as the Chief of Police involved with the criminal investigation of Piccone's brother and sister-in-law, would ostensibly have access to facts indicating that Piccone herself knew the location of her brother and his family. Similarly, given Bartels' personal involvement in the investigation, DHS might be more apt to view his remarks not as mere opinion but as authoritative or, at the very least, based on specific non-disclosed information that he had discovered during his investigation.

Bartels also provided DHS with the arrest warrants for Piccone's brother and

10

sister-in-law as well as the writs of habeas corpus for their three children, thereby
further linking Piccone to the police investigation despite the arguable irrelevance of the
documents to the altercation between Bartels and Piccone. Given these circumstances
and drawing all inferences in favor of Piccone, the court does not believe that Bartels
can escape liability at this nascent stage of the proceedings merely by couching his
statements as "thoughts." *See Riley v. Harr*, 292 F.3d 282, 289 (1st Cir. 2002) (noting
that it would be "destructive of the law of [defamation] if a writer could escape liability for
accusations of [defamatory conduct] simply by using, explicitly or implicitly, the words, 'I
think.'") (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 16 (1990)). In sum, should
Piccone's factual allegations bear out, the comments which Bartels is alleged to have
made, to the extent they imply the existence of undisclosed defamatory facts, would fail
to qualify as protected statements of opinion.

### b. Quaglia's Slander Claim

For his part, Quaglia alleges that, during a discussion with a Massachusetts
State Trooper, Bartels asserted that Quaglia had provided "assistance" to fugitives. As
indicated, the imputation to an individual of such criminal behavior may be considered
defamatory. *See Stone*, 330 N.E.2d at 165. In fact, Bartels does not appear to dispute
that his remark may be deemed defamatory; instead, he asserts that the remark is not
actionable because it is subject to an absolute privilege. Relying on *Correllas v.
Viveiros*, Bartels argues that because his discussion with the Massachusetts State
Trooper occurred during the course of a "judicial proceeding" -- *i.e.*, the ongoing criminal
investigation of Piccone's brother and sister-in-law -- his statements are "absolutely
privileged . . . even if uttered with malice or bad faith." 572 N.E.2d 7, 10 (Mass. 1991).

11

Quaglia, in turn, argues that Bartels' statements are not privileged at all because they were not made in the course of a judicial proceeding involving *him*.

The court believes that the parties have focused their attention on the wrong inquiry. First, there is no support for Qugalia's position limiting the exercise of the privilege, whatever its scope, in the manner he suggests. Second, Bartels' reliance on *Correllas* is misplaced. In extending an absolute privilege to protect *witnesses'* statements made during a criminal investigation prior to the institution of formal judicial proceedings, the Supreme Judicial Court noted that because, "[u]nder Massachusetts law, statements made *to* police or prosecutors prior to trial are absolutely privileged if they are made in the context of a proposed judicial proceeding," statements made leading up to such a proceeding should likewise be privileged because they "are part of a continuous transaction where disclosure should occur without fear of a civil action for defamation." 572 N.E.2d at 11-12 (emphasis added). The court, however, expressed no opinion on whether an absolute privilege would extend to statements *by* police officers during a criminal investigation where there is arguably less concern regarding disclosure. If anything, statements made by police officers in the course of conducting an investigation have traditionally been protected by a conditional privilege only. *See, e.g., Draghetti v. Chmielewski*, 626 N.E.2d 862, 867-68 (Mass. 1994) (applying a conditional privilege analysis to a police chief's report on internal investigations to the press); *Seelig v. Harvard Coop. Soc'y*, 246 N.E.2d 642, 646-47 (Mass. 1969) (applying a conditional privilege analysis to a police officer's statements made in the course of an investigation regarding an individual's alleged participation in a crime).

The *Seelig* decision is particularly instructive. There, the court considered

12

whether a defendant corporation operating a retail store could be held liable for a former employee's allegedly slanderous comments when the former employee was a police officer and the comments were made during the course of a criminal investigation involving the plaintiff. *Seelig*, 246 N.E.2d. at 646-47. The defendant argued that the police officer's statements were conditionally privileged and there was no evidence that they were uttered with actual malice. The court agreed that the officer's statements were conditionally privileged but nonetheless denied the defendant's motion for a directed verdict because "the plaintiff has the right, notwithstanding the privileged character of the communication, to go to the jury, if there be evidence tending to show actual malice." *Seelig*, 246 N.E.2d at 646-47.

Here, too, the court believes, Bartels' statements may well be entitled to a conditional privilege if they were made to advance an investigation, as Bartels asserts. Nevertheless, the court will recommend that Bartels' motion to dismiss Quaglia's slander claim be denied. Quaglia alleges that Bartels made the remarks about his abetting criminals despite Bartels' actual knowledge that the statements were false; if accurate, Quaglia's allegations could establish that Bartels made the statements with actual malice, thereby defeating the conditional privilege.

c. Remaining Claims of Defamation

Although the court has some doubt regarding Plaintiffs' remaining claims of defamation -- some of which regard statements that may well be classified as opinion -- it has not undertaken the task of culling out which defamatory statements may proceed and which may not. At this nascent stage of the proceedings, it is enough that Plaintiffs have alleged sufficient facts from which the court may draw the reasonable inference

13

that some of Bartels' remarks were defamatory. Moreover, Plaintiffs, to the extent they are asserting claims of defamation *per se*, are not required to prove special damages. *See Phelan v. May Dep't Stores Co.*, 819 N.E.2d 550, 553-54 (Mass. 2004) ("[T]he imputation of a crime is defamatory per se, requiring no proof of special damages."). Accordingly, the court will recommend that Bartels' motion to dismiss Plaintiffs' slander claims be denied.

### 2. Intentional Interference with Advantageous Relations (Count III)

As to Count III, their claim of intentional interference with advantageous relations, Plaintiffs must ultimately establish the following: (1) a business relationship or contemplated contract of economic benefit; (2) Bartels' knowledge of such relationship; (3) Bartels' intentional and malicious interference with it; and (4) Plaintiffs' loss of advantage directly resulting from Bartels' conduct. *Am. Private Line Serv., Inc. v. Eastern Microwave, Inc.*, 980 F.2d 33, 36 (1st Cir. 1992) (citing *United Truck Leasing Corp. v. Geltman*, 551 N.E.2d 20, 23 (Mass. 1990). The court will recommend that this count survive.

To be sure, Bartels argues that dismissal is appropriate because Plaintiffs have failed to allege that their employment relationships with DHS had been severed. There is, however, no such requirement to establish intentional interference with advantageous relations. Bartels' misapprehension, the court believes, arises from his conflation of the tort of intentional interference with advantageous relations and the tort of intentional interference with contractual relations, only the latter of which requires proof that the defendant "knowingly induced the third party to break the contract." *Alba v. Sampson*, 690 N.E.2d 1240, 1243 (Mass. App. Ct. 1998). This is not an uncommon

14

occurrence, and courts themselves have not always "consistently distinguished between the two torts." *United Truck Leasing Corp.*, 551 N.E.2d at 815 n.6. Nonetheless, they are separate claims with distinct elements. *See Am. Private Line Serv.*, 980 F.2d at 35-37 (analyzing separately plaintiff's claims for intentional interference with contractual relations and interference with an advantageous relationship); *McNamee v. Jenkins*, 754 N.E.2d 740, 745-46 (Mass. App. Ct. 2001) (finding that plaintiff had a "reasonable expectation" of establishing interference with advantageous relations where he could potentially show that he was transferred to a shift with lower pay); *White v. Massachusetts State Police*, 2003 WL 23163123, No. 993959B, * 20-21 (Mass. Super. Ct. Nov. 18, 2003) (denying motion for summary judgment on plaintiff's claim for interference with advantageous relations based on the damage done to the plaintiff's reputation and her inability to perform certain functions because contested issues of fact remained regarding the defendants' motive behind denying plaintiff a transfer and and the harm plaintiff suffered as a result). It is therefore not dispositive of Plaintiffs' claim, as Bartels would have it, that they remain employed by DHS to this day.

Bartels' only other argument for dismissal of Count III centers on Quaglia having received "either a promotion or a raise, or both, since the time of the alleged events." (Def. Mot. to Dismiss at 14.) Quaglia, however, disputes this assertion and maintains that he was offered the new position two days *prior* to the events in question; assuming, as it must, that Quaglia has not received any economic benefit after Bartels' comments, he has pled sufficient facts to establish a plausible claim. Relatedly, Bartels says nothing about Piccone's harm as a result of his alleged interference. Accordingly, the court will recommend that Bartels' motion with regard to Count III be denied.

15

### 3. Privacy (Count IV)

In Massachusetts, the right to privacy, which forms the basis of Count IV, is governed by Mass. Gen. L. ch. 214 § 1B, which provides that "[a] person shall have a right against unreasonable, substantial or serious interference with his privacy." This provision has been interpreted to proscribe "disclosure of facts . . . that are of a highly personal or intimate nature when there exists no legitimate, countervailing interest." *Dasey v. Anderson*, 304 F.3d 148, 153 (1st Cir. 2002) (quoting *Bratt v. Int'l Bus. Machs. Corp.*, 467 N.E.2d 126, 133-34 (Mass. 1984)). The court believes that Bartels' motion to dismiss this count should be allowed.

Plaintiffs baldly assert in their complaint that Bartels "substantially and seriously interfered with [their] right of privacy by disclosing statements to DHS that were of a highly personal nature," but they provide no exposition for why any of the disclosed facts should be deemed "highly personal." (Compl. ¶¶ 80-81.) Plaintiffs' opposition to Bartels' motion is similarly deficient; it merely reiterates the threadbare assertion from their complaint that Bartels "disclosed facts of a highly personal nature about [them] to which they had a right to privacy." (Pls. Opp. at 12.)   Such a "formulaic recitation of the elements of a cause of action," is, in the court's opinion, insufficient to survive a motion to dismiss. *Iqbal*, 129 S. Ct. at 1949.

The court also finds unpersuasive Plaintiffs' argument that Bartels infringed their privacy rights by providing to DHS copies of the arrest warrants for Piccone's brother and sister-in-law, as well as the writs of habeas corpus for their three children. These documents did not contain any information regarding Plaintiffs, much less information that could be considered highly personal or intimate. The court will therefore

16

recommend that Bartels' motion be allowed with regard to Count III.

4. Intentional Infliction of Emotional Distress (Count V)

Piccone herself also asserts a claim of intentional infliction of emotional distress. To establish her claim, she must prove that: (1) Bartels intended to cause, or should have known that his conduct would cause, emotional distress; (2) Bartels' conduct was extreme and outrageous; (3) Bartels' actions caused her distress; and (4) the emotional distress sustained by her was "severe" and of a nature that no reasonable person could be expected to endure it. *Agis v. Howard Johnson Co.*, 355 N.E.2d 315, 318-19 (Mass. 1976). The initial question of whether the complained-of conduct was "extreme and outrageous" may be determined as a matter of law. *Sena v. Commonwealth*, 629 N.E.2d 986, 994 (Mass. 1994). Even at the motion to dismiss stage of a proceeding, this standard has been set "very high" so as to "avoid[] litigation in situations where only bad manners and mere hurt feelings are involved." *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 195 (1st Cir. 1996) (quoting *Agis*, 355 N.E.2d at 145).

The court does not believe that Piccone has alleged any conduct on Bartels' part that meets this standard. Piccone's complaint contains only the conclusory statements that "Bartels intended to inflict emotional distress upon [her]," and that his conduct "was extreme and outrageous," and "did in fact cause [her] emotional distress . . . severe and of a nature that no reasonable person should be expected to endure." (Compl. ¶¶ 84-87.) Such assertions, in the court's opinion, fall short of pleading standards applicable to such claims. *See Doyle*, 103 F.3d at 195.

To be sure, in her opposition to Bartels' motion, Piccone attempts to cure the deficiency in her complaint by arguing that "there was no basis for [Bartels] to

subsequently contact DHS inasmuch as it was not in furtherance of any investigation

regarding [Plaintiffs] and it had no nexus to their employment with DHS" and that Bartels

"knew that Plaintiffs were acting in their private capacity concerning a very personal

family matter and that they were not acting under the authority of DHS." (Pl. Opp. at

14.) Even so, in the court's view, Bartels' decision to contact DHS to report an

altercation that he had with Piccone and his statements describing the event fall far

short of conduct stretching "beyond all possible bounds of decency . . . and utterly

intolerable in a civilized community." *Agis*, 355 N.E.2d at 318-19.   Accordingly, the

court will recommend allowing Bartels' motion to the extent it seeks to dismiss Piccone's

claim of intentional infliction of emotional distress.

### III. Conclusion

For the reasons stated, the court finds, first, that Plaintiffs adequately stated the

amount-in-controversy minimum.   Second, the court recommends that Bartels' motion to

dismiss be DENIED with regard to Plaintiffs' claims of slander and intentional

interference with advantageous relations, but otherwise be ALLOWED.[2]

---

[2] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or
Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations
must file a written objection with the Clerk of this Court **within fourteen (14) days** of the
party's receipt of this Report and Recommendation.   The written objection must
specifically identify the portion of the proposed findings or recommendations to which
objection is made and the basis for such objection.   The parties are further advised that
failure to comply with this rule shall preclude further appellate review by the Court of
Appeals of the District Court order entered pursuant to this Report and
Recommendation. *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275
(1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v.
Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-
79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir.
1980). *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985). A party may respond to
another party's objections within fourteen (14) days after being served with a copy

18

DATED: July 19, 2011

                                        /s/   Kenneth P. Neiman
                                        KENNETH P. NEIMAN
                                        U.S. Magistrate Judge

thereof.

19